J-S58009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KEVIN PENO, | |
| Appellant | No. 1795 MDA 2015 |

Appeal from the Judgment of Sentence September 10, 2015
in the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0002996-1996

BEFORE:  GANTMAN, P.J., BOWES, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 13, 2016**

Appellant, Kevin Peno, appeals from the judgment of sentence entered on September 10, 2015, following the revocation of his probation.  On appeal, Appellant contends that the evidence was insufficient to sustain the revocation of probation, that the use of an electronic monitoring bracelet violated the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, and that his sentence was excessive and unreasonable.  For the reasons discussed below, we affirm the judgment of sentence.

_____

[*] Retired Senior Judge assigned to the Superior Court.

We take the underlying facts and procedural history in this matter from this Court's prior memorandums, and our independent review of the certified record.

On March 18, 1998, following a trial, a jury convicted Appellant of possession of a firearm by a former convict.[1]  On April 17, 1998, the trial court sentenced Appellant to a term of incarceration of not less than two and one-half nor more than five years.  That same day, Appellant entered a negotiated guilty plea to one count each of rape, involuntary deviate sexual intercourse, aggravated indecent assault, statutory sexual assault, endangering the welfare of children, indecent assault, corruption of minors, and criminal conspiracy.[2]  The charges arose from Appellant's abuse of his two very young stepchildren.  (**See** N.T. Sentencing, 4/17/98 at 8-9).

In accord with the terms of the plea agreement, the trial court sentenced Appellant to an aggregate term of incarceration (which included the sentence for possession of a firearm) of not less than seven and one-half nor more than fifteen years, to be followed by a term of twenty years of probation.  At sentencing, the trial court added an additional stipulation: "[T]hat the [Appellant] shall not be eligible for parole until he has completed

---

[1] 18 Pa.C.S.A. § 6105.

[2] 18 Pa.C.S.A. §§ 3121, 3123, 3125, 3122.1, 4304, 3126, 6301, and 903, respectively.

whatever sexual offender programming is available to him in the state correctional system and found to be suitable for parole with regards to these sexual offenses against children." (*Id.* at 23). Appellant did not file a direct appeal, but did file multiple petitions pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. All were denied.

While incarcerated, Appellant refused to complete a sexual offender's program. (*See* N.T. Revocation Hearing, 6/08/12, at 79). Thus, Appellant served the maximum of his aggregate incarceration sentence of fifteen years.

On November 10, 2011, immediately prior to Appellant's release, the Dauphin County Adult Probation Department lodged a detainer against Appellant. The department subsequently issued a notice of alleged violations of probation claiming that Appellant's failure to complete sexual offender treatment rendered him a poor candidate for probation.

On January 4, 2012, the trial court held a *Gagnon II* hearing.[3] At the hearing, Appellant challenged the propriety of subjecting him to revocation of probation for non-compliance with an order to complete sex-offender treatment as a violation of due process. (*See* N.T. Revocation Hearing, 1/04/12, at 4-6). The trial court continued the matter pending submission of briefs. (*See id.* at 14).

---

[3] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

The revocation hearing resumed on May 22, 2012. At that time, the Commonwealth presented a supplemental notice of violation based upon alleged death threats Appellant issued against two trial judges and the assistant district attorney who prosecuted the underlying action. (**See** N.T. Revocation Hearing, 5/22/12, at 6-8). The trial court again continued the matter to allow Appellant time to address the new allegations. (**See id.** at 7-8).

The continued hearing took place on June 8, 2012. At the close of the hearing, the trial court revoked Appellant's probation based both upon the failure to complete sexual offender treatment and the death threats. (**See** N.T. Revocation Hearing, 6/08/12, at 85-87). The court sentenced Appellant to an aggregate term of incarceration of not less than seventeen and one-half nor more than thirty-five years. (**See id.** at 87-88).

On appeal, this Court vacated the judgment of sentence. (**See Commonwealth v. Peno**, No. 1219 MDA 2012, 2013 WL 11254189, (unpublished memorandum) at *1 (Pa. Super. filed Aug. 16, 2013)). This Court held that the condition of parole imposed by the trial court was illegal. (**See id.** at *4).

Following remand, on July 18, 2014, by agreement of the parties to expedite Appellant's release from incarceration, the trial court issued an order modifying the conditions of Appellant's probation to include certain geographic restrictions to be enforced by GPS monitoring. (**See** N.T.

Revocation Hearing, 3/16/15, at 1-4; *see also* Order of Court, 7/18/14, at unnumbered pages 1-2). On August 1, 2014, the Dauphin County Adult Probation Department issued a notice of alleged violation. (*See* N.T. Revocation Hearing, 3/16/15, at 24-25). On March 16, 2015, a *Gagnon II* hearing took place.

At the hearing, Meredith E. Zurin, a probation officer with the Dauphin County Probation Services Office testified on behalf of the Commonwealth. (*See id.* at 6-25). Probation Officer Zurin stated Appellant was released from incarceration on July 18, 2014 and that, the same day, she fitted Appellant for an electronic monitoring ankle bracelet and explained the operation of the GPS component to him. (*See id.* at 7-8, 18). She told Appellant not to "mess" with the device and that all he was to do was plug it in every night for charging. (*Id.* at 8). She noted that Appellant signed the rules for use of the system. (*See id.* at 9). Appellant was to use it until the probation office could complete procedures for a pre-arranged transfer for him to New Hampshire. (*See id.* at 9).

Probation Officer Zurin further testified that, on July 25, 2014, she received a tamper notification with respect to Appellant's electronic monitor. (*See id.* at 10). She attempted to contact Appellant both via cell phone and by making the ankle bracelet buzz and beep but did not receive any response. (*See id.*). Approximately twenty to twenty-five minutes later, Probation Officer Zurin located Appellant sitting on a park bench in front of

his residence. (**See id.** at 11). When questioned, Appellant claimed that "[n]othing" was going on with the device. (**Id.** at 12). Appellant pulled up his pants and Probation Officer Zurin ascertained that while the ankle bracelet was still around his leg, "the actual brain or device was not attached. It was just laying (sic) in his sock." (**Id.** at 12). Appellant claimed that the ankle bracelet irritated him, so he decided to clean it. (**See id.**). Probation Officer Zurin showed the court a representative electronic monitoring appliance and demonstrated that it could not be taken apart without the use of tools. (**See id.** at 12-16). Following the hearing, the trial court adjourned the matter for briefing. (**See id.** at 27).

Because of the tampering with the appliance, the Commonwealth charged Appellant with criminal mischief.[4] On May 21, 2015, by agreement of the parties, the trial court held a summary hearing and found Appellant guilty of criminal mischief for tampering with it. (**See** N.T. Summary Hearing, 5/21/15, at 4-6, 29). The trial court immediately sentenced Appellant to pay the costs of prosecution and a fine of one hundred dollars. (**See id.** at 30).

On June 11, 2015, the trial court issued an order finding that Appellant violated the conditions of his probation. (**See** Order of Court, 6/11/15). A sentencing hearing took place on September 10, 2015. The trial court

_____

[4] 18 Pa.C.S.A. § 3304.

sentenced Appellant to a term of incarceration of not less than four years and two months nor more than twenty years to be followed by a consecutive term of probation of twenty years. (*See* N.T. Sentencing, 9/10/15, at 13-14).

On September 21, 2015, Appellant filed a timely post-sentence motion. On October 5, 2015, the trial court denied the motion, but based upon a time-credit error, modified Appellant's minimum sentence to not less than three years, nine months and twenty-four days of incarceration. (*See* Order, 10/05/15, at unnumbered page 1). The instant, timely appeal followed on October 8, 2015.[5]

On appeal, Appellant raises the following questions for our review:[6]

> I. Was not the evidence insufficient to establish either of the two overlapping bases for the probation revocation when there was no showing that [Appellant] with the requisite degree of criminal culpability either damaged the GPS equipment for purposes of the summary offense at 18 Pa.C.S.[A.] §3304 or tampered with the GPS equipment for purposes of a charge of technically violating the conditions of probation?
>
> II. Was the court's ordering of GPS monitoring as an amended condition of probation without a hearing and without [Appellant's] consent rendered a nullity because: (a) it contravened the terms of 42 Pa.C.S.[A.] §9771(d); (b) it contravened [Appellant's] due process rights; (c) it constituted

---

[5] On October 14, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on November 2, 2015. *See id.* The trial court did not issue an opinion. *See* Pa.R.A.P. 1925(a).

[6] We have reordered the issues in Appellant's brief.

an unreasonable search; and (d) [Appellant's] counsel had no standing to consent to the entry of such an order and was coerced into consenting under threat of a continuation of [Appellant's] illegal incarceration?

III. Was the imposition of a probation violation sentence of [not less than three] years, [ten] months, [nor more than twenty] [sic] years['] incarceration clearly unreasonable, so manifestly excessive as to constitute an abuse of discretion, and inconsistent with the protection of the public, the gravity of the offenses, and [Appellant's] rehabilitative needs where the revocation conduct occurred one week after [Appellant] was released from prison after serving almost three years of illegal incarceration and where such conduct involved a summary offense and technical violation?

(Appellant's Brief, at 6) (unnecessary capitalization omitted).

In the first issue on appeal, Appellant argues that the evidence was insufficient to sustain the revocation of probation. (*See* Appellant's Brief, at 47). Specifically, Appellant claims that the revocation was partially based upon his criminal conviction for criminal mischief and the evidence was insufficient to support that conviction. (*See id.* at 48-50). Appellant also contends that the evidence was insufficient to support the technical violation of tampering with the GPS device because his damage to the device was minor and unintentional. (*See id.* at 50-51). We disagree.

> The procedures for revoking probation and the rights afforded to a probationer during revocation proceedings are well settled:
>
> > [w]hen a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed. Where a finding of probable cause is made, a second, more

- 8 -

comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made.

The *Gagnon II* hearing entails two decisions: first, a "consideration of whether the facts determined warrant revocation." *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "The first step in a *Gagnon II* revocation decision . . . involves a wholly retrospective factual question: whether the parolee [or probationer] has in fact acted in violation of one or more conditions of his parole [or probation]." *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973) (citing *Morrissey*, *supra*, 408 U.S. at 484, 92 S.Ct. 2593). It is this fact that must be demonstrated by evidence containing probative value. "Only if it is determined that the parolee [or probationer] did violate the conditions does the second question arise: should the parolee [or probationer] be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" *Gagnon v. Scarpelli*, *supra*, 411 U.S. at 784, 93 S.Ct. 1756, (citing *Morrissey v. Brewer*, *supra*, 408 U.S. at 484, 92 S.Ct. 2593, 33 L.Ed.2d 484). Thus, the *Gagnon II* hearing is more complete than the *Gagnon I* hearing in affording the probationer additional due process safeguards, specifically: (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.

> Further, we note that there is a lesser burden of proof in a *Gagnon II* hearing than in a criminal trial because the focus of a violation hearing is whether the conduct of the probationer indicates that the probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct. Thus, the Commonwealth need only prove a violation of probation by a preponderance of the evidence.

*Commonwealth v. Allshouse*, 969 A.2d 1236, 1240-41 (Pa. Super. 2009) (some citations and quotation marks omitted). Lastly, a claim that the evidence was insufficient to sustain revocation is

> a question of law subject to plenary review. We must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the offenses. A reviewing court may not weigh the evidence or substitute its judgment for that of the trial court.

*Commonwealth v. Perrault*, 930 A.2d 553, 558 (Pa. Super. 2007), *appeal denied*, 945 A.2d 169 (Pa. 2008) (citation omitted).

Initially, we note that Appellant's challenge to the sufficiency of the evidence underlying his conviction for criminal mischief is not properly before us. The trial court convicted and sentenced Appellant on May 21, 2015. Appellant did not file a post-sentence motion or direct appeal. It is settled that the date of pronouncement "of sentence [is] the moment from which [the appellant's] filing clock commence[s]." *Commonwealth v. Nahavandian*, 954 A.2d 625, 630 (Pa. Super. 2008); *see also* Pa.R.Crim.P. 720. Thus, Appellant's judgment of sentence became final after the trial court imposed sentence and Appellant did not file a direct appeal. *See*

- 10 -

Pa.R.A.P. 903(3). Therefore, Appellant has waived his right to appeal the judgment of sentence for criminal mischief and we lack jurisdiction to review it.

Moreover, Appellant has not provided any legal support for the novel theory that he can collaterally challenge his criminal conviction in an appeal of a probation revocation proceeding. To the contrary, this Court has stated, "an appeal challenging a revocation of probation proceeding cannot be used to attack the underlying conviction." **Commonwealth v. Cartrette**, 83 A.3d 1030, 1036 (Pa. Super. 2013) (*en banc*) (interpreting Pennsylvania Supreme Court's decision in **Commonwealth v. Gilmore**, 348 A.2d 425, 427 (Pa. 1975)). Thus, Appellant cannot collaterally attack his conviction for criminal mischief in this appeal.

Appellant also contends that the evidence of the technical violation of probation presented at the March 16, 2015 revocation hearing was insufficient.[7] (**See** Appellant's Brief, at 50-51). We disagree.

As discussed above, at the revocation hearing, Probation Officer Zurin testified that she had explained the operation of the GPS device to Appellant and warned him not to tamper with it. (**See** N.T. Revocation Hearing, 3/16/15, at 7-8, 18). Appellant signed the rules for use of the electronic

---

[7] We note that Appellant views the evidence in the light most favorable to himself rather than the light most favorable to the Commonwealth as verdict winner. **See Perrault**, **supra** at 558.

monitoring device. (*See id.* at 9). Despite this, on July 25, 2014, Probation Officer Zurin received a tamper notification with respect to it. (*See id.* at 10). She was unable to contact Appellant via either cell phone or the appliance. (*See id.*). When she located Appellant sitting on a park bench in front of his residence, he initially lied to her about the condition of the electronic monitor and attempted to deceive her by demonstrating that the bracelet was still attached to his leg. (*See id.* at 11-12). When Probation Officer Zurin examined the machine, she discovered that it was in pieces, with parts of it hidden in Appellant's sock. (*See id.* at 12). Probation Officer Zurin demonstrated to the trial court how difficult it was to damage the mechanism in this manner and that it required the use of tools or pointed objects to do so. (*See id.* at 12-16). Viewing the evidence in the light most favorable to the Commonwealth, this was more than sufficient to demonstrate that Appellant knowingly tampered with the electronic monitoring system despite being warned not to touch it. Appellant's first claim lacks merit. *See Perrault*, *supra* at 558.

In the second issue, Appellant argues that the imposition of the added condition of probation, the GPS monitoring, was unconstitutional and that this, therefore, nullifies any subsequent violation of that condition. (*See* Appellant's Brief, at 34). We disagree.

Even if we were to assume, *arguendo*, that imposition of the GPS monitoring was unconstitutional, (or for that matter, illegal or improper),

Appellant provides no support for his claim that this nullifies his revocation of probation. The trial court revoked Appellant's probation based upon his conviction for criminal mischief and upon his technical violation of probation for tampering with the GPS device. There is simply no support in law for the concept that you can challenge the constitutionality of GPS monitoring as a condition of probation by damaging a GPS device and forcibly removing it.

We find helpful for the purpose of analogy, the Pennsylvania Supreme Court's decision in **Commonwealth v. Biagini**, 655 A.2d 492 (Pa. 1995). In **Biagini**, our Supreme Court stated:

> [t]he defendants' argument in support of their position that the convictions on resisting arrest and aggravated assault must be reversed is set forth in the following syllogistic form: as the crime of resisting arrest cannot be sustained where the underlying arrest is unlawful, their convictions for resisting arrest cannot stand; and since the underlying arrest was unlawful they were justified in physically resisting the police; therefore, as their resistance was justified it cannot become the basis for their convictions for aggravated assault. This syllogism, although facially appealing, is fatally flawed. The appeal of this argument lies within the validity of the first premise; however, for the reasons more thoroughly set forth hereinafter, the secondary premise and thus, the conclusion are invalid.

**Biagini**, **supra** at 496.

While finding that both defendants' arrests were unlawful, the Court noted that this did not justify the use of force in resisting that arrest, and it therefore affirmed the defendants' convictions for aggravated assault arising out of that illegal arrest. **See id.** at 499-500; **see also Commonwealth v. Jackson**, 924 A.2d 618, 621 (Pa. 2007) ("The initial illegality does not give

- 13 -

the arrestee a free pass to commit new offenses without responsibility. Neither does that initial illegality 'poison the tree,' preventing lawful police conduct thereafter—the new crimes are new trees, planted by appellee, and the fruit that grows from them is not automatically tainted by the initial lack of probable cause.").

We find the reasoning in **Biagini** and **Jackson** both persuasive and relevant. Even if the imposition of the GPS monitoring was illegal, which we do not decide, Appellant did not have a "free pass" to commit criminal mischief by damaging the device or to violate his probation by tampering with it. **Jackson**, **supra** at 621; **see also Biagini**, **supra** at 499-500. Appellant's second claim lacks merit.

In the third issue, Appellant challenges the discretionary aspects of his sentence.[8] In **Cartrette**, **supra**, an *en banc* panel of this Court held that "this Court's scope of review in an appeal from a revocation sentencing includes discretionary sentencing challenges." **Cartrette**, **supra** at 1034. Thus, Appellant's claim is properly before us.

The right to appeal the discretionary aspects of a sentence is not absolute. **See Commonwealth v. McAfee**, 849 A.2d 270, 274 (Pa. Super. 2004), *appeal denied*, 860 A.2d 122 (Pa. 2004). When an appellant

---

[8] We note that Appellant preserved his discretionary aspects of sentence claim by filing a timely post-sentence motion for reconsideration of sentence. **See McAfee**, **infra** at 275.

challenges the discretionary aspects of the sentence imposed, he must present "a substantial question as to the appropriateness of the sentence[.]" ***Commonwealth v. Anderson***, 830 A.2d 1013, 1017 (Pa. Super. 2003) (citations omitted). An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate "a colorable argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." ***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1263 (Pa. Super. 2005) (*en banc*), *appeal denied*, 887 A.2d 1240 (Pa. 2005) (citation omitted). If an appellant's Rule 2119(f) statement meets these prerequisites, we determine whether a substantial question exists. ***See Commonwealth v. Goggins***, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). "Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits." ***Id.*** (emphases in original).

Here, Appellant has included a Rule 2119(f) statement in his brief. (***See*** Appellant's Brief, at 13-15). Appellant argues that his sentence was manifestly excessive because his technical violation of probation did not justify a sentence of total confinement. (***See id.*** at 32-33). He also argues that the trial court relied on impermissible factors in imposing sentence. (***See id.*** at 33).

Initially, Appellant has waived his claim that the trial court relied on impermissible factors in imposing sentence. (*See* Appellant's Brief, at 55-58). This Court has long held an appellant waives any discretionary aspects of sentence issue not raised in a post-sentence motion; further, an appellant cannot raise an issue for the first time on appeal. *See Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 831 A.2d 599 (Pa. 2003) (finding claim sentencing court did not put sufficient reasons to justify sentence on record waived where issue was not raised in post-sentence motion); *see also* Pa.R.A.P. 302(a). The only claim Appellant raised in his post-sentence motion was that his technical violation of probation did not justify a sentence of total confinement. (*See* Appellant's Post Sentence Motions, 9/21/15, at unnumbered page 2). Thus, Appellant waived this claim. *See Mann*, *supra* at 794.

Appellant next claims that his sentence was manifestly excessive because he only committed a technical violation of probation, which did not justify a sentence of total confinement. (*See* Appellant's Brief, at 53-55). Appellant properly preserved this claim by raising it in his post-sentence motion. (*See* Appellant's Post Sentence Motions, 9/21/15, at unnumbered page 2); *see also Commonwealth v. Schutzues*, 54 A.3d 86, 98 (Pa. Super. 2012), *appeal denied*, 67 A.3d 796 (Pa. 2013) (defendant must preserve argument that record is devoid of evidence supporting sentence of

total confinement as challenge to discretionary aspects of sentence). This claim raises a substantial question. ***See id.***

> [T]he imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. . . . Once probation has been revoked, a sentence of total confinement may be imposed if any of the following conditions exist: (1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or, (3) such a sentence is essential to vindicate the authority of court.

***Commonwealth v. Edwards***, 71 A.3d 323, 327 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013) (citations omitted).

Here, Appellant's argument relies on the erroneous supposition that this Court would overturn his conviction for criminal mischief. (***See*** Appellant's Brief, at 54). It was both his new criminal conviction and the technical violation of probation that supported a sentence of total confinement. Moreover, at sentencing, the trial court found that all three conditions mandating total confinement applied. (***See*** N.T. Sentencing, 9/10/15, at 13). Our review of the record demonstrates no abuse of discretion in this finding, given that Appellant was on probation for approximately one week, when he deliberately damaged the GPS monitoring device. Further, his history demonstrates that he served the maximum sentence for raping two young children because he was unwilling to comply with the requirements of sex offender treatment. (***See id.***). Thus, the record amply supports Appellant's sentence of total confinement and his

claim that the sentence was excessive and unreasonable is meritless. ***See***

***Edwards***, ***supra*** at 327.

Therefore, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/2016